0IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WANDA ALABARCES | * |
| Plaintiff | * |
| v. | * Civil No. 04-2041(SEC) |
| SABRE HOLDINGS CORP., et al | * |
| Defendants | * |

*****************************************

**OPINION AND ORDER**

Pending before the Court is Defendants' Motion for Summary Judgment (Docket # 27) and Plaintiff's opposition thereto (Dockets ##33, 35). After considering all the filings and the applicable law, for the reasons stated below, Defendants' motion will be **GRANTED**.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a

choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005) (quoting from Garside, 895 F.2d at 48 (1st Cir. 1990). By like token, 'material' "means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Rojas-Ithier v. Sociedad Española de Auxilio Mutuo, 394 F.3d 40, 42-43 (1st Cir. 2005) (citations omitted). Therefore, there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Id. (citations omitted).

**Factual Background**

Plaintiff worked for Co-defendant Sabre International and its predecessor American Airlines for a period of thirty-seven (37) years, until she was terminated on June 22, 2004. See, Defendants' Statement of Undisputed Material Facts (hereinafter "SUF") ¶¶ 1-2. At the time of her termination, Plaintiff was fifty-seven (57) years old and was occupying the position of Senior Sales Representative. Id. at ¶¶ 3-4. During her tenure at Sabre, and particularly during 2003, Plaintiff received positive reviews for her performance. Id. at 18.

In early September 2003, Co-defendant Sabre International commenced a company-wide reduction-in-force ("RIF"). Id. at ¶ 9. At the time, there were eighteen (18) employees in Sabre International's Puerto Rico office; eleven (11) were over the age of forty and seven (7) were under that age. Id. at ¶ 10. Co-defendant Sabre International contends that in determining which employees were to be laid off, it took into account five non-age related criteria and that as part of the process all employees were considered possible targets for the RIF. Id. at ¶¶ 11-12. Plaintiff argues that she and others were targeted because of age, benefits, and cost. See, Plaintiff's Statement of Contested Material Facts (hereinafter "SCF"), Docket # 33-1, ¶11. As evidence of age discrimination, Plaintiff points to statements made by Mr. Jay Jones, Senior Vice-President of Sabre Travel Network, Latin

**Civil No. 04-2041(SEC)** 3

America Division, regarding how well she looked for her age and a statement by Ms. Julia de Jesús, a vice-president of Sabre Travel Network, that Mr. Jones wanted Plaintiff to be laid off because she was old. SUF at ¶¶ 44-45.

On September 4, 2003, Plaintiff found out about the RIF and called the company's compliance hotline to complain that she was being discriminated because of age and should not be fired as part of the RIF. SUF at ¶ 13. On October 30, 2003, Co-defendant Sabre International concluded its RIF; Plaintiff was not dismissed. Id. at ¶15. Per Plaintiff's account, she was not laid-off at that moment because of the complaint that she had made. See, Plaintiff's deposition, Defendant's Ex. C, p. 24.

After the RIF, from January 2004 onwards, Plaintiff sent several e-mails to different persons within and outside the company. Defendants characterize the content and tone of at least some of the e-mails as unprofessional, insubordinate, and inappropriate, in violation of Co-defendant Sabre International's Business Ethics Policy. SUF at ¶ 19. Plaintiff disputes such characterization and argues that the e-mails are out of context or fail to support Defendants' contention that Plaintiff's behavior was inappropriate. SCF at ¶ 19. Defendants add that during this same time period, Plaintiff refused to update a required performance tool, the "Development and Performance Management goals" (hereinafter "DPM"). SUF at ¶ 21. Plaintiff counters that she did not refuse to update it, but merely asked her supervisor to discuss some of her expected goals. SCF at ¶ 21. Defendants round out their factual contentions on this subject by stating that insubordination is a violation of Co-defendant Sabre International's Business Ethics Policy that can lead to immediate dismissal. SUF at ¶ 22. Once again, Plaintiff disagrees, and points out that insubordination is not mentioned in that policy and, per the policy, the only conduct which is identified as potentially warranting dismissal is retaliation. SCF at ¶ 22.

On June 16, 2004, Plaintiff's supervisor, Walt Baez, gave Plaintiff a warning letter. Docket # 27-5, p. 38. Therein, Mr. Baez identified several instances of Plaintiff's conduct

**Civil No. 04-2041(SEC)**                                                                                                          4

which he considered insubordination or unprofessional and requested improvement from Plaintiff on those areas.  The letter added that nothing therein prevented him from taking further corrective action.  On June 20, 2006, Plaintiff sent Mr. Baez an opposition letter to the warning letter, sending copy thereof to several other managers. Dockets # 27-5, p. 44-45 and #27-6, p. 1-5.  Plaintiff contested several of the "charges" and took a different view of the interpretation to be given to her communications.  She added some complaints she had about the workplace and the process of giving her the warning letter and tacked on several examples of what she deemed was Mr. Baez's improper conduct.

On June 22, 2004, Plaintiff was informed that she had been terminated for insubordination.  SUF at ¶ 33.  Plaintiff later filed this lawsuit, alleging discrimination and retaliation in violation of the Age Discrimination in Employment Act ( "ADEA"), 29 U.S.C. § 621 *et seq.*, and violations of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. §§ 1161 *et seq.*("COBRA") and Puerto Rico's Act 80, 29 P.R. Laws Ann. §185 *et seq.*, Act 100, 29 P.R. Laws Ann. §146 *et seq.*,  and Art. 1802 of the Civil Code, 31 P.R. Laws Ann. §5141, res

**Applicable Law and Analysis**

Defendants move for summary judgment on all claims on the following grounds: (1) Plaintiff has failed to adduce enough evidence to support her *prima-facie* ADEA case or show pretext, (2) Plaintiff has failed to produce evidence to support her retaliation claim; (3) Plaintiff's COBRA claim against Defendants must fail as a matter of law; (4) dismissal of the supplemental-law claims would be proper once the Court dismisses all of the federal-law claims; and (5) in any event, Co-defendants Sabre Holdings and Sabre Inc. are improper parties.  Insofar as necessary, we address each argument in turn.

**I. ADEA**

<u>A. Termination</u>

The ADEA makes it unlawful for an employer " . . . to discharge any individual . . .

**Civil No. 04-2041(SEC)**                                                                                                     5

because of such individual's age." 29 U.S.C. § 623(a)(1).  "In order to prevail in a lawsuit under the ADEA, the plaintiff's age must actually have played a role in the employer's decision-making process and have had a determinative or motivating influence on the outcome."  Hoffman v. Applicators Sales and Services, Inc., 439 F.3d 9, 17 (1st Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)).

Under the familiar McDonnell Douglas burden-shifting framework, in order to make out a *prima facie* case of age discrimination, Plaintiff must show that she: (1)was at least forty (40) years of age; (2) met the employer's legitimate job performance expectations; (3) experienced adverse employment action; and (4) the employer had a continuing need for the services provided by the position from which the claimant was discharged. Cordero-Soto v. Island Finance, Inc., 418 F.3d 114, 119 (1st Cir. 2005) (citing González v. El Día, Inc., 304 F.3d 63, 68 n.5 (1st Cir. 2002)).  Defendants concede that Plaintiff meets the first and third elements of the *prima facie* case, and for purposes of summary judgment, also concede the fourth element.

Defendants argue, however, that Plaintiff cannot prove that she met Defendants' legitimate  job performance expectations.  They point to the communications and attitudes that Plaintiff engaged in from January 2004 until her termination, and which were the subject of the June 16, 2004 letter.  They add that Plaintiff's opposition letter, a mere four days after the warning letter, is also symptomatic of the problems identified in the warning letter: insubordination and impropriety in her communications.  This evidence, they argue, supports their conclusion that Plaintiff did not meet the legitimate job expectations.  Plaintiff counters this argument by pointing to her overall employment record.  We agree with Plaintiff that she has met the third element of her *prima facie* ADEA case because there is evidence that her job performance met the employer's legitimate expectations throughout the years, even if that evidence does not extend to the time of termination . See, Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670 (1st Cir. 1996).

Finding that Plaintiff has met her burden of establishing a *prima facie* case of age discrimination does not end our inquiry. Under the McDonnell Douglas framework, once Plaintiff establishes her *prima facie* case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. Hoffman, 439 F.3d at 17 (citing González, 304 F.3d at 70). Defendants here have met that burden. They have produced a legitimate, non-discriminatory reason for the adverse employment action: Plaintiff's alleged insubordination and improper conduct. Since Defendants have produced a legitimate non-discriminatory reason for the adverse employment action, the presumption of discrimination that arose out of Plaintiff's *prima facie* case vanishes, and "the sole remaining issue is of discrimination *vel non*". Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45 (1st Cir. 2002) (citing Reeves, 530 U.S. at 142; Meléndez-Arroyo v. Cuttler Hammer de P.R. Co. Inc., 273 F.30, 33 (1st Cir. 2001)).

Plaintiff has set about surmounting this challenge by presenting evidence that casts doubt on the "facts" identified by Defendants as indicative of insubordination and inappropriate behavior. For example, Plaintiff disputes the two instances of insubordination identified in the warning letter: her failure to update the DPM document and her failure to inform her supervisor whether or not she would be attending a company activity. As to the first, Plaintiff asserts that she had requested a meeting with her supervisor to discuss some of the goals to be included in the document. With regards to the second, Plaintiff posits that she did speak to her supervisor about that activity and informed him that she would seek other professional opportunities. Plaintiff has also brought forth evidence supporting the claims she made against her supervisor in her opposition letter, in which Defendants also rely for support their charge of insubordination.

We take no issue with Plaintiff's argument that she has brought forth sufficient evidence to create an issue of fact as to whether Defendant's asserted legitimate reason for the termination is true or not. However, evidence that Defendant's legitimate non-

**Civil No. 04-2041(SEC)**                                                                                                          7

discriminatory reason may be false, in and of itself, is insufficient to carry Plaintiff's burden. See, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993) (rejection of Defendant's proffered reason for the adverse employment action does not compel judgment for plaintiff). And while in appropriate circumstances, such evidence, along with evidence establishing a *prima-facie* case may be enough for a finding of discrimination, see, Reeves, 530 U.S. at 148, such is not the case here. Plaintiff's only evidence of discriminatory animus are Mr. Jay Jones' remarks, at unspecified dates, of disbelief about Plaintiff's age and how well she looked for her age. Plaintiff has identified two instances in which Mr. Jones made such comments. Furthermore, Plaintiff has provided no information regarding the dates on which such comments were made. Stray remarks are not enough to meet Plaintiff's burden in an ADEA case, Thomas v. Sears, Roebuck & Co., 144 F.3d 31, 34 (1st Cir. 1998) (citations omitted). As such, since Plaintiff has not proffered evidence that would create an issue of fact as to whether age was a factor in her dismissal, her claim of discrimination under ADEA fails. See, Hoffman, 409 F.3d at 17 (concluding that "regardless of whether defendants' stated reasons for termination could be found to be pretextual, no fact-finder could rationally conclude from the record before the district court that the termination –whatever its precise motivation– was motivated by discrimination based upon [plaintiff's] age"); Ronda-Pérez v. Banco Bilbao Vizcaya Argentaria- Puerto Rico, 404 F.3d 42, 48 (1st Cir. 2005) (affirming grant of summary judgment for employer and concluding that "the dozen perceived chinks in appellee's reasons for terminating plaintiff ... fail to indicate that there is a triable issue of age-related discrimination to bring before a trier of fact."); Zapata-Matos, 277 F.3d at 47 (plaintiff's creating of a weak issue of fact regarding pretext, absent other evidence of discrimination, insufficient to meet plaintiff's burden); Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10 (1st Cir. 2001) (granting employer judgment as a matter of law in age discrimination claim; even though jury could have reasonably disbelieved employer's stated reason for the dismissals, there was no evidence from which to conclude that age bias played

**Civil No. 04-2041(SEC)**                                                                                                8

a motivating role in the adverse employment actions). Consequently, Defendants' motion for summary judgment on this claim is **GRANTED**.

      B. Retaliation

      The ADEA also prohibits retaliation: an employer may not discriminate against an employee who has "opposed any practice made unlawful by this section" or who has " made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C.A. §623(d). In order to establish a *prima facie* case of retaliation, an ADEA plaintiff must show that: (1) she engaged in ADEA-protected conduct, (2) she was thereafter subjected to an adverse employment action, and (3) a causal connection existed between the protected conduct and the adverse action. Ramírez-Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 84 (1st Cir. 2005) (quoting Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991)). As before, if the plaintiff establishes a *prima facie* case, the employer must articulate a legitimate, non-discriminatory reason for its action. Id. Once the employer shoulders that burden, the plaintiff must show that the employer's proffered reason is "a pretext masking retaliation for the employee's opposition to a practice cast into doubt by the ADEA". Id. In order for the plaintiff to ultimately succeed, it is unnecessary for an actual ADEA violation to have occured; it is enough for plaintiff to have a good-faith belief that such a violation indeed took place. Id.

      Defendants assert that Plaintiff cannot establish the third prong of the *prima facie* case: the causal connection. Plaintiff points to the temporal proximity between the ongoing complaint and the adverse employment action. Assuming, as Plaintiff would have us do, that she engaged in protected activity as late as March 2003, when the second investigation of her complaint concluded, three months elapsed between that date and the adverse employment action. Plaintiff also argues that in analyzing the causation requirement, the Court should take into account the controversies surrounding the warning letter: Plaintiff's evidence that the contentions therein are false.

**Civil No. 04-2041(SEC)**  9

As before, the problem with Plaintiff's arguments resides in that she cannot link the adverse employment action with retaliatory animus. Whatever else Plaintiff's evidence may show –a difficult relationship with her supervisors, unhappiness with the way things were going at the work-place, etc.– it does not carry her burden of proving that Defendants retaliated against her because she opposed an employment practice prohibited by the ADEA. Accordingly, Defendants' motion on the retaliation claim is **GRANTED**.

**II. COBRA**

"[COBRA] requires that employers allow former employees the opportunity to elect the continuation of their health care coverage for a period of time, at their own expense, if they are terminated." Claudio-Gotay v. Becton Dickinson Caribe, Ltd, 375 F.3d 99, 103 (1st Cir. 2004)(citing 29 U.S.C. § 1161). Therefore a plan administrator has, at most, forty four (44) days after the "qualifying event" to notify the former employee that he/she can elect continuation of health care coverage (i.e. the employer has thirty (30) days to notify the plan administrator of the termination or "qualifying event" and the plan administrator has fourteen (14) days to notify the former employee). Id. at 104. Per Section 1163 a termination from employment is a "qualifying event" which would otherwise end an employee's health insurance coverage. 29 U.S.C. § 1163(2); see Torres-Negrón v. Ramallo Bros. Printing, Inc., 203 F.Supp.2d 120, 123 (D.P.R. 2002).

There is no dispute that Co-defendant Sabre International notified the plan administrator, Conexis, of Plaintiff's termination within ten (10) days of that event. See, SUF ¶ 38. It is also undisputed that sixteen (16) days after the termination, Conexis timely sent its COBRA notice to Plaintiff via regular mail to her last known address. See, Id. at ¶ 41.

On these facts, which Plaintiff expressly admitted in her statement of contested facts, see, Docket #33-1 at ¶¶ 38-43, it appears pellucidly clear that Plaintiff's COBRA claim cannot prosper. Defendants have argued as much, and Plaintiff failed to include any counter-

**Civil No. 04-2041(SEC)** 10

===============================================================================

argument on that point in her opposition to summary judgment.  Accordingly, as it is evident from the undisputed facts that Defendants complied with their obligations under COBRA, their motion for summary judgment on this claim is **GRANTED**.

### III. Supplemental Law Claims

Having granted Defendants' summary judgment as to Plaintiff's federal law claims, we will, as requested, dismiss without prejudice Plaintiff's Commonwealth law claims against them.  See, Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) ("[t]he power of a federal court to hear and to determine sate-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit.").  Plaintiff's supplemental law claims will be **DISMISSED WITHOUT PREJUDICE.**

### Conclusion

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED**.  Judgment will be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of September 2006.

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge